IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GI SPORTZ, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:16-CV-2020-D |
| VS. | § | |
| | § | |
| APX GEAR, LLC | § | |
| (a/k/a APX PAINT CO.), | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for trademark infringement and unfair competition under
federal and common law, defendant moves to transfer the case to the Central District of
California under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, in the
interest of justice. For the reasons that follow, the court grants the motion.

I

Plaintiffs GI Sportz Inc. and GI Sportz Direct LLC (collectively, "GI Sportz," unless
otherwise indicated) are the world's leading providers of equipment and supplies to the
paintball industry. GI Sportz alleges that, for many years, it has marketed paintballs having
a distinctive, non-functional pattern of contrasting colors and has offered these paintballs
under the registered trademark "Marballizer." It asserts that this distinctive design has
become associated with Marballizer brand paintballs and constitutes the Marballizer trade
dress. To protect its trade dress, GI Sportz owns and maintains a federal trademark
registration, U.S. Reg. No. 3,049,101 ("the Registration"), which covers the Marballizer

trade dress.  The Registration describes the Marballizer trade dress as consisting of "contrasting colors blended randomly together to form the appearance of a fanciful design on the surface of a paintball."  Compl. ¶ 10.  GI Sportz alleges that the Registration is incontestable under 15 U.S.C. § 1065.

Defendant APX Gear, LLC (a/k/a APX Paint Co.) ("APX") also manufactures and sells paintballs.  According to the complaint, beginning in December 2015, APX began to market and sell paintballs featuring the Marballizer trade dress and now offers all of its paintball product line in various colors of "swirl."

GI Sportz sues APX in this court, asserting claims for federal trademark infringement under 15 U.S.C. § 1114(1)(a), unfair competition under 15 U.S.C. § 1125(a), common law trademark infringement, and common law unfair competition.  APX moves under Fed. R. Civ. P. 12(b)(6) to dismiss GI Sportz's claims for failure to state a claim, moves under 28 U.S.C. § 1404(a) to transfer this case to the Central District of California, and, in the alternative, moves for a more definite statement under Rule 12(e).  GI Sportz opposes APX's motion.

II

The court begins with APX's motion to transfer venue.  Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank*

- 2 -

*One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983)).  "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other."  *Sivertson v. Clinton*, 2011 WL 4100958, at \*3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at \*6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).  Moreover,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer.  The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at \*1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*"); *see also Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue.").  Once the court resolves this issue, it must in deciding whether to transfer the case evaluate "a number of private and public interest factors, none of which are given dispositive weight."  *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.

2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. Defendant must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (final brackets in original) (quoting § 1404(a)).

III

The parties do not dispute, and the court holds, that GI Sportz could have brought this lawsuit in the Central District of California. For venue purposes, APX "resides" in Newport Beach,[1] which is located in Orange County, California, within the Southern Division of the

_____

[1]APX, a limited liability company, alleges that it is a California company with a principal place of business in Newport Beach, California. Under 28 U.S.C. § 1391(c)(2), a corporate defendant is deemed to "reside," for venue purposes, in any judicial district in which it is subject to the court's personal jurisdiction with respect to the civil action in question. "[A]lthough the wording of section 1391(c) only appears to apply to corporations, courts have held and it is generally accepted that unincorporated business associations such

Central District of California.  *See* 28 U.S.C. § 84(c).

IV

Before addressing the public and private interest factors, the court determines the weight to be accorded GI Sportz's choice of forum.  "A plaintiff's choice is normally entitled to deference, but when [it] files suit outside [its] home forum, the weight accorded to the choice is diminished."  *Sivertson*, 2011 WL 4100958, at *4 (citations omitted).  GI Sportz's choice of the Northern District of Texas is not entitled to significant weight.  GI Sportz Inc. is based in Montreal, Canada, and GI Sportz Direct LLC is based in New Jersey.  Although GI Sportz contends that "a substantial number" of its paintball customers reside in Texas and "a substantial amount of Marballizer branded product is sold throughout Texas," Ps. Br. 11, there is no suggestion that Texas could be considered GI Sportz's "home forum" or that Texas—as opposed to California, where more than 50% of the allegedly infringing paintballs were sold—has a special connection to the operative facts underlying this case.[2]

---

as partnerships and limited liability companies are analogous to corporations for venue purposes."  *Feline Instincts, LLC v. Feline Future Cat Food Co.*, 2010 WL 4942188, at *5 (N.D. Tex. Dec. 6, 2010) (Means, J.) (quoting *Advocate Fin., L.L.C. v. Parker Interests, L.L.C.*, 2008 WL 2773650, at *1 (M.D. La. July 16, 2008)).  It is undisputed that APX is subject to personal jurisdiction in the Central District of California.

[2]GI Sportz contends that APX has sought to establish a distribution mechanism in the Northern District of Texas, that it has advertised a "Texas Exclusive" product, and that APX's expansion of its sale of infringing paintballs into this forum would threaten GI Sportz's "substantial" Texas sales.  Ps. Br. 11.  Although these allegations are sufficient to establish that venue is proper in the Northern District of Texas, they do not establish either that the Northern District of Texas could be considered GI Sportz's home forum or that the operative facts underlying the case—here, the sale of allegedly *infringing* paintballs—occurred in the Northern District of Texas.

Accordingly, the court gives less deference to GI Sportz's initial choice of forum. *See, e.g., Rimkus Consulting Grp., Inc. v. Balentine*, 693 F.Supp.2d 681, 690-91 (S.D. Tex. 2010) ("Although a plaintiff's initial choice of forum is entitled to deference, the degree of deference is higher when he has chosen his home forum. Conversely, when a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum, a court gives less deference to a plaintiff's choice." (citations omitted)).

## V

The court now turns to the private interest factors.

### A

The first private interest factor examines the relative ease of access to sources of proof. APX contends that nearly all sources of proof are located in the Central District of California: APX is located there; all of the product's development, testing, research, and production occurred there; APX's president (who is responsible for APX's day-to-day management, product development, and customer relations), and all of its employees work there; sales and financial information concerning the "swirl" product is located there; APX has identified at least 11 third party witnesses located in California; and over 50% of APX's sales are to customers in California. GI Sportz counters that this case will focus on consumer protection of readily-transportable paintballs; that the only thing uniquely in California that must be accessed is electronic data; and that given the ease with which data can be transferred with today's technology, this factor is entitled to little weight.

The court holds that this factor weighs slightly in favor of transfer. "Although the

technological convenience of e-discovery may diminish concerns associated with the location of evidence, it does not negate the significance of or eliminate consideration of this factor in a section 1404(a) transfer analysis." *Smith's Consumer Prods., Inc. v. Fortune Prods., Inc.*, 2015 WL 1037419, at *2 (N.D. Tex. Mar. 9, 2015) (Kinkeade, J.) (citations omitted); *see also Davis v. City of Fort Worth*, 2014 WL 2915881, at *3 (N.D. Tex. June 25, 2014) (Fitzwater, C.J.) ("Regardless whether technological advances and email service would make litigating this case in the Dallas Division *possible*, there is still a *greater* ease of access to sources of proof in Fort Worth.").  And in this case, GI Sportz points to no documentary or other evidence located in the Northern District of Texas. *See Smith's Consumer Prods.*, 2015 WL 1037419, at *2 (first factor weighed in favor of transfer where party opposing transfer did not "specif[y] where any of its documentary proof is located . . . [and] merely arg[ued] that this factor is not given much weight in the analysis.").  Accordingly, the court concludes this factor weighs slightly in favor of transfer.

B

The second private interest factor examines the availability of compulsory process over witnesses.  APX lists in its motion eleven third-party witnesses and one third-party business, all of whom reside or are located in California, that it plans to call to testify on its behalf concerning the lack of customer confusion between GI Sportz's Marballizer paintball and APX's "swirl" paintball.  APX alleges that "[t]hese witnesses *may be* unwilling to appear to testify at trial, absent a subpoena requiring them to do so."  D. Br. 14 (emphasis added).  GI Sportz responds that this factor weighs against transfer because, *inter alia*, APX has failed

- 7 -

to identify a single material witness whose appearance would have to be compelled by process.

Although APX has pointed to numerous nonparty witnesses who would be outside the subpoena power of this court, it has not identified—other than by speculating that some of these witnesses "may be unwilling" to appear to testify at trial—any nonparty witness for whom compulsory process will be necessary. Accordingly, the court finds this factor to be neutral. *See Sivertson*, 2011 WL 4100958, at *5 (finding second factor was neutral because defendants failed to identify any witnesses for whom compulsory process would be needed).

## C

The third private interest factor considers the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor). A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'" *Sargent v. Sun Tr. Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812). "'The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover.'" *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (quoting 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851, at 221-22 (3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850,

at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

APX contends that this factor weighs strongly in favor of transfer. In addition to the key party witnesses in this case (all of whom live in the Central District of California), APX lists eleven third party witnesses located in California that it maintains would have to travel a substantial distance and incur significant costs if the case remains in Texas. The third party witnesses consist of APX's commercial customers (most of whom are either sellers of paintball products or owners of paintball fields) who are expected to testify regarding, *inter alia*, the similarities and lack thereof between GI Sportz's Marballizer paintball and APX's "swirl" paintball; the lack of confusion among paintball-purchasing customers regarding the two; and the fact that APX's "swirl" paintballs, unlike GI Sportz's Marballizer paintballs, are generally known among players, field owners, and store owners to be made in the United States.

GI Sportz responds that the relevant third-party witnesses on the question of consumer confusion are not APX's distributors (to whom APX sells directly within the Central District

of California), but are, instead, the end-user consumers who purchase paintballs at the field[3];

that it has identified over 20 locations within just 50 miles of the courthouse where paintballs

bearing the Marballizer trade dress have traditionally been sold; and that "there are plenty

of the relevant variety of third-party witnesses to determine confusion within just *fifty* miles

of this Courthouse."  Ps. Br. 18.  GI Sportz also contends that it selected Texas as a venue

in large part because of the evidence it found that APX is moving product though this state

as APX expands eastward; that GI Sportz's party witnesses are in either New Jersey or

Montreal, and Texas (specifically, Dallas) represents a middle ground that GI Sportz selected

"due to its mutual convenience,"[4] *id.*; that if this case were transferred to the Central District

---

[3]GI Sportz maintains that this case will turn on whether paintball customers are likely to be confused between paintballs featuring GI Sportz's registered trade dress and APX's newly-launched "swirl" paintballs, and that this will be determined by an analysis of

> (1) the strength of GI [Sportz]'s registered mark, which will be shown by longevity of use, sales volume and consumer recognition; (2) a comparison of marks, which is up to the finder of fact[;] (3) similarity of products, which will be shown through expert testimony[;] (4) evidence of consumers who are actually confused, who may be anywhere in the United States, including this District, or by expert consumer survey testimony; (5) evidence of channels of trade[;] (6) sophistication of purchasers[;] and (7) the degree of care employed by consumers, which will be shown through party witnesses and expert testimony.

Ps. Br. 12.  GI Sportz contends that none of this evidence is uniquely located in the Central District of California or uniquely available through the purported witnesses whom APX has identified.

[4]Plaintiff contends that Dallas is the closest city to half-way between New Jersey/Montreal and Newport Beach, offers multiple regular daily flights and a sophisticated

- 10 -

of California, GI Sportz would have to travel 2,500 miles one way from Montreal to Los Angeles (across three time zones), which, at a minimum would require an extra day of travel to account for the time change and Los Angeles ground traffic, which it contends is much worse than Dallas; and that the alleged inconvenience to APX is not compelling, as is evidenced by APX's president Alex Keys's ability to meet for a litigation-related conference in Chicago on a Monday, and also travel to Oceanside and Cleveland.

The court holds that this factor favors transfer. It is undisputed that all of APX's party witnesses and at least eleven nonparty witnesses reside in the Central District of California. GI Sportz has failed to identify any key witnesses who are located in the Northern District of Texas.[5] And GI Sportz has not persuaded the court that, aside from the two-hour time difference between Dallas and California, it is either less convenient or more costly for GI Sportz's witnesses (most of whom likely reside in either New Jersey or Montreal) to travel to Los Angeles rather than to Dallas. Moreover, to the extent GI Sportz argues that this case should remain in the Northern District of Texas based on "mutual convenience," and position as "a middle ground," Ps. Br. 18, courts have clearly held that "[i]n cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of

_____

federal court, and is in a time zone that does not put the three-hour time change difference squarely on either party.

[5]As APX points out in its reply, GI Sportz has demonstrated only that its *own* paintballs were sold at a number of locations in the Dallas area, but has "failed to mention the name of a single person in Texas (or the Northern District) that had ever purchased or seen one of Defendant's allegedly infringing products." D. Reply 5-6.

the witnesses is improper."  *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F.Supp.2d

696, 702 (E.D. Tex. 2011); *see also In re Genentech, Inc.*, 566 F.3d 1388, 1344 (Fed. Cir.

2009) ("[I]t is undisputed that no identified witness is a resident of Texas, let alone a resident

of the Eastern District of Texas.  Thus, the district court improperly used its central location

as a consideration in the absence of witnesses within the plaintiff's choice of venue.").

Accordingly, although there may be many other witnesses who reside elsewhere in the

United States, APX has demonstrated that, as between the Northern District of Texas and the

Central District of California, the Central District of California is more convenient for the

key witnesses.  Accordingly, this factor supports transferring the case.

D

The fourth private interest factor is a catch-all consideration that includes all other

practical problems that make trial of a case easy, expeditious, and inexpensive.  Under the

fourth private interest factor, GI Sportz argues that in the interest of judicial economy the

court should transfer this case to the District of New Jersey rather than to the Central District

of California because GI Sportz has brought a suit for trade dress infringement and breach

of contract against one of its competitors in the District of New Jersey, and "[t]he present suit

. . . could be consolidated, at least in part, with the pending suit in the District of New

Jersey."[6]  Ps. Br. 21.  Accordingly, GI Sportz posits that "if this Court does not choose to

---

[6]GI Sportz argues that Judge Hillman of the District of New Jersey is already familiar with GI Sportz's trade dress, and because the legal issues in the New Jersey case and in this case overlap, judicial economy weighs in favor of transferring the case to New Jersey rather than to California.

retain this case, it should transfer this case to the District of New Jersey, which is a more suitable alternative than the Central District of California." *Id.*

As a preliminary matter, the court notes that GI Sportz has neither moved to transfer this case to the District of New Jersey nor has made any showing that the private and public interest factors weigh in favor of transferring the case there. But even assuming *arguendo* that GI Sportz's statement that the court "should transfer this case to the District of New Jersey" should be construed as GI Sportz's own motion to transfer, it has not persuaded the court that the fourth factor weighs strongly in favor of transfer. GI Sportz contends that Judge Hillman of the District of New Jersey is familiar with its trade dress, but does not otherwise explain how the interests of judicial economy will be served by transferring this case to the District of New Jersey. Although GI Sportz's trade dress is at issue in both cases, the Marballizer trade dress it is not particularly complicated. As far as the evidence and witnesses are concerned, GI Sportz does not point to any specific evidence or witnesses of its own who will be the same for the two cases, although the court could probably presume that there will be at least some overlap. And more important, GI Sportz does not contend that there will be any overlap in the evidence or witnesses relied on by APX in this case or by Valken, the defendant in the New Jersey case. Accordingly, even assuming that GI Sportz is requesting that the court transfer this case to the District of New Jersey over the Central District of California, the court concludes that the fourth factor weighs only slightly, if at all, in favor of transferring the case to that venue.

- 13 -

VI

The court now turns to the public interest factors.

A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues.  APX points to statistical evidence that the median time to trial for civil cases in the Central District of California is about seven months faster than the Northern District of Texas.  GI Sportz counters that, if the full six years of statistics are considered, the true difference is fewer than four months, which is "hardly a compelling basis for transferring this case."  *Id.*  Moreover, GI Sportz contends that the four-month difference will be quickly lost by transferring the case since its preliminary injunction motion has been filed and is presently pending before the court, and transferring the case to the Central District of California will likely stall the proceedings until a new court can be assigned, new local rules applied, and, potentially, new briefing is filed under Ninth Circuit law.

The court concludes that the first public interest factor weighs in favor of transfer.  Whether the court considers statistical evidence from the past six years or only more recent statistical evidence, it is undisputed that the median time from filing to trial for civil cases in the Central District of California is faster than in the Northern District of Texas.  The difference may only grow more pronounced, considering that there are currently four judicial vacancies in the Northern District of Texas, including two in the Dallas Division.  Moreover, even if this court were inclined to consider the additional delay that might result from the

- 14 -

transfer itself, the amended brief in support of GI Sportz's motion for a preliminary injunction was filed on October 26, 2016, APX has not yet filed a response, and GI Sportz does not point to any significant difference between Fifth and Ninth Circuit law that would require changes (apart from case citations) to the motion it has already submitted.

B

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)). APX contends that all of its products were designed and developed in the Central District of California, where it is headquartered, and, thus, the residents of the Central District of California have a particularized interest in the subject matter of this lawsuit. GI Sportz responds that

> the local interest of GI [Sportz]'s choice of forum here in the Northern District of Texas outweighs the convenience of the forum where APX's manufacturing facilities and party witnesses reside in California. Moreover, the paintball consumers of this District have a real interest in avoiding confusion in selecting their preferred paintballs.

Ps. Br. 22.

Assuming *arguendo* that the location of alleged consumer confusion is the only relevant inquiry in the context of claims for trademark and trade dress infringement, the court nonetheless concludes that the Central District of California has a greater local interest in the

- 15 -

dispute. APX contends that over 50% of its sales, both overall sales and sales with the accused "swirl" design, are to customers in California.  And it points out in its reply that

> [a]lthough they do note that there are numerous paintball fields and retailers in the Dallas area who use their own products, they never specify, describe or demonstrate an instance of even a single paintball of Defendant's being present or being purchased (or sold) in the Northern District, and do not identify a single person that has ever observed or purchased one of the allegedly infringing paintballs in this District.

D. Reply 5.  The court agrees.  Considering that there is no contention that APX has ever sold its allegedly infringing paintballs here, it would require speculation to conclude that consumers in the Northern District of Texas have an interest in avoiding confusion in selecting their preferred paintballs.  Moreover, GI Sportz has not explained why consumers in the Northern District of Texas would have any greater interest in this dispute than paintball consumers in any other location in which APX's or GI Sportz's paintballs are sold. Accordingly, the court concludes that this factor weighs in favor of transfer.

## C

The third factor addresses the familiarity of the forum with the law that will govern the case.  The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. The parties agree that the third and fourth factors are neutral.

## D

Considering all the relevant factors holistically, the court holds that the Central District of California is clearly more convenient when compared to the Northern District of

Texas.  On the one hand, nearly all of the factors (other than those that are neutral) support transfer.  On the other hand, GI Sportz has not identified a single factor weighing against transfer.  In fact, GI Sportz's only argument against transfer seems to be that if the court is inclined to transfer the case, it should instead transfer it to the District of New Jersey, where a similar case against a different defendant is pending.  But no § 1404(a) factor appears to favor maintaining this case in the Northern District of Texas.  And there is nothing in the record that suggests that this case is, in any meaningful way, related to the Northern District of Texas when compared with the Central District of California.[7]

\* \* \*

For the reasons explained, defendant's motion to transfer venue is granted, and this case is transferred to the Southern Division[8] of the Central District of California.  The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED**.

November 8, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[7]Because the court is granting APX's motion to transfer, it will not address APX's Rule 12(b)(6) motion to dismiss for failure to state a claim or motion for a more definite statement under Rule 12(e).

[8]APX does not request transfer to a specific division within the Central District of California.  Because APX is headquartered in Newport Beach, which is in Orange County, in the Southern Division of the Central District of California, the court transfers this case to the Southern division.